# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                **Case No. 15-cr-01515-RB-2**

**TOBY CHAPIN PADILLA,**

    **Defendant.**

## **OBJECTIONS TO PRESENTENCE REPORT**

    COMES NOW defendant TOBY CHAPIN PADILLA, through his attorney Jose R. Coronado, and files the following Objections to the Presentence Report.

    Mr. Padilla objects to:

    1. The entry on page 5, ¶7, which states, "As a leader and organizer within the DTO, Padilla's role was aggravating." Within the same paragraph the PSR correctly states that "Mr. Padilla was a mid-level source of supply and directed Lucero and Miranda during the course of this DTO." The PSR states that Mr. Padilla began as an equal partner to Jacquez but became subordinate to Jacquez after December 2014. Upon information and belief, Mr. Jacquez received a two-point departure as a minor participant. If this is so, then it is difficult to understand how Mr. Padilla, a mid-level supplier subordinate to Mr. Jacquez, could be categorized as an organizer, leader, manager, or supervisor in his criminal conduct, while Mr. Jacquez was not (See ¶18 of PSR).

    2. The entry on page 5, ¶7, which states, "Mr. Padilla was a mid-level source of supply and directed Lucero and Miranda during the course of this DTO." Mr. Padilla does not deny that he gave Miranda product for her use, but denies that he directed her during the course of the DTO.

[1]

3. The entry on page 5, ¶7 which states "Time Frame 08/23/14", that states that he, "Agreed to supply 13.8 net grams of pure methamphetamine to Ruiz at Mondello's request. Directed Lucero to deliver the methamphetamine to Ruiz to sell to a confidential source."

Mr. Padilla admits that Mr. Mondello called him to do a deal, but denies that he agreed to do it, because he knew the confidential source was a "snitch."

4. The entry on page 5, ¶7 which states "Time Frame 12/04/14—12/10/14," that states that, "Sent Lucero to collect drug debts and deliver the money to Duarte for the purchase of methamphetamine described below."

Mr. Padilla never dealt with Duarte during his involvement in the conspiracy, either directly or indirectly through a third person.

5. The entry on page 5, ¶7 which states, "Time Frame 12/10/14," that states, "Along with Juarez, purchased 1 pound (0.45kg) of methamphetamine from Duarte using the drug proceeds collected by Lucero." The 1 pound (0.45kg) of methamphetamine should not be attributed to Mr. Padilla. Mr. Padilla never dealt with Duarte during his involvement in the conspiracy.

6. The entry on page 6, ¶8, which states, "Moreno, accompanied by Davila, picked up 1 pound (0.45 kg) of methamphetamine from Duarte for Jacquez and Padilla using drug proceeds from Romero".

Mr. Padilla denies this entry, and states that this amount of methamphetamine was for Jacquez, not Mr. Padilla. It is not named in the overt acts as one of the things Mr. Padilla did or had done for him. Mr. Padilla submits that it is not in the overt acts because it is not something with which he was involved.

7. The entry on page 6, ¶8, which states, "Based on the aforementioned details, Padilla is

being held accountable for no less than 2.58 kilograms of mixtures and substances containing methamphetamine and 67.26 net grams of pure methamphetamine (actual)." The methodology used by the probation officer for her calculation is unclear. In ¶7 of the PSR she concludes that Mr. Padilla, "Supplied a total of 1.4832 kilograms of methamphetamine to various customers over an unknown period of time according to wire interceptions and cooperating defendants." It is unclear how the probation officer could calculate 1.4832 kilograms as one amount and 2.58 kilograms as another amount, then conclude that the total amount attributable to Mr. Padilla is 2.58 kilograms. She apparently relied upon the 1) wire interceptions and the 2) cooperating defendants. But the PSR does not refer to what pages in the wire interceptions support her conclusion, and what reliable information cooperating defendants gave to support her conclusion. It is unclear how much of the 1.4832 kilograms (or 2.58 kilograms) came from wire interceptions and how much came from cooperating defendants.

8. The source of the information is important for obvious reasons. The specific words and discussions used in wire interceptions may be subject to debate, not only as to what was discussed, but also as to amounts discussed. There is no mention that the probation officer listened to wire interceptions with Mr. Padilla as the speaker, and that she understood his words to have a specific meaning as to narcotic drug and quantity of same. It is unknown if the probation officer listened to a wire intercept between two or more defendants in the DTO, who discussed type and quantity of drug, and whose discussion was attributed to Mr. Padilla simply because his name came up during the discussion.

9. As for the information the probation officer relied on from cooperating defendants, there is no way of assessing the credibility of the information the cooperating defendants gave the probation officer, both as to quantity of drug and Mr. Padilla's responsibility for same.

10. There must be factual support in the record for the determination of drug quantity attributable to Mr. Padilla. The PSR's reliance on wire intercepts and the statements of cooperating defendants, without more, does not establish the factual support necessary on which this court can rely to establish that quantity. The bald statement that the PSR determined the quantity, "according to wire interceptions and cooperating defendants" is insufficient as a matter of law. *U.S. v. Dalton*, 409 F.3d 1247 (10th Cir. 2005); *U.S. v Navarrette-Aguilar*, 813 F.3d 785 (9th Cir. 2015).

11. Mr. Padilla objects to the probation officer's conclusion as to amount of drug attributable to him during the DTO.

12. Mr. Padilla objects to ¶15 of the PSR, which establishes his BOL at Level 32. The BOL is based upon an erroneous conclusion of how much of the methamphetamine is attributable to him.

Respectfully submitted,

*/s/ Jose R. Coronado*
JOSE R. CORONADO
Attorney for Toby Chapin Padilla
135 West Griggs Ave.
Las Cruces, NM 88001
(575) 525-2517 – Phone
(575) 525-2518 – Fax
jose@coronadolawlc.com

## CERTIFICATE OF SERVICE

I certify that a copy of this Objections To Presentence Report was filed through the CM/ECF system which caused the following parties to be served electronically: Assistant U.S. Attorney Richard C. Williams, richard.c.williams@usdoj.gov, 200 N. Church Street, Suite 300, Las Cruces, New Mexico 88001-3512 and Yvonne Sandoval, Yvonne_Sandoval@nmcourt.fed.us, U.S. Probation, 100 N. Church Street, Suite 100, Las Cruces, NM 88001, this 1st day of June, 2018.

*/s/ Jose R. Coronado*
JOSE R. CORONADO

[4]